IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOYCE R. MONGER | : | CIVIL ACTION – LAW |
| | : | |
| v. | : | NO.:   02-CV-2757 |
| | : | |
| SALOMON J. BERENHOLZ | : | JURY TRIAL DEMANDED |

DEFENDANT'S ANSWER WITH AFFIRMATIVE
DEFENSES AND COUNTERCLAIM

1.   Admitted on information and belief.

2.   Admitted.

3.   Denied as a conclusion of law.

4.   Denied as a conclusion of law.

5.   Admitted.

6.   Denied that plaintiff was the corporate secretary at all material times.

7.   Admitted that an agreement titled Severance Agreement and General Release was entered on or about September 1, 1998.  The remaining averments are denied in that the Agreement is a written document that speaks for itself.  Denied that the Agreement was attached as an exhibit.

8.   Denied, in that the Agreement is a written document that speaks for itself.

9.   Denied, in that the Agreement is a written document that speaks for itself.

10.   Admitted.

11.   Denied, in that the Agreement is a written document that speaks for itself.

KOP:222752v1 4523-01

12. Denied, in that the Agreement is a written document that speaks for itself.

13. Denied, in that the Agreement is a written document that speaks for itself.

14. Denied, in that the Agreement is a written document that speaks for itself. Denied that the stock certificate was attached as an exhibit.

15. Denied, in that the Agreement is a written document that speaks for itself. Denied that defendant has breached any obligation to the plaintiff. Denied further on the basis of the averments set forth below, which are hereby incorporated herein.

## COUNT ONE

16. The foregoing averments are hereby incorporated by reference.

17. Denied as a conclusion of law and on the basis of the averments set forth below, which are hereby incorporated herein.

18. Denied as a conclusion of law and on the basis of the averments set forth below, which are hereby incorporated herein.

19. Plaintiff's claimed entitlement to a jury trial is denied as a conclusion of law.

**WHEREFORE,** defendant requests that the Court dismiss the Complaint, and award such other relief as the Court may deem appropriate.

## COUNT TWO

20. The foregoing averments are hereby incorporated by reference.

21. Denied as a conclusion of law and on the basis of the averments set forth below, which are hereby incorporated herein.

22. Denied as a conclusion of law and on the basis of the averments set forth below, which are hereby incorporated herein.

23. Denied as a conclusion of law and on the basis of the averments set forth below, which are hereby incorporated herein.

24. Denied as a conclusion of law and on the basis of the averments set forth below, which are hereby incorporated herein.

25. Plaintiff's claimed entitlement to a jury trial is denied as a conclusion of law.

**WHEREFORE,** defendant requests that the Court dismiss the Complaint, and award such other relief as the Court may deem appropriate.

### AFFIRMATIVE DEFENSES

26. The foregoing averments are hereby incorporated by reference.

27. Plaintiff is defendant's niece. Previous to the events described herein, plaintiff's father had passed away, and defendant, based on family loyalty, was concerned about plaintiff's well-being, and was interested in assisting plaintiff and her family, financially and otherwise.

28. On and before 1988, plaintiff was working in Ohio in the education field, and was looking for other financially-viable employment opportunities. In approximately 1988, defendant offered plaintiff a lucrative position at Lansdale Manufacturing, a company he founded and operated, even though plaintiff had no background or qualifications that pertained to Lansdale Manufacturing's business. Defendant offered plaintiff this position based solely on defendant's above-described concern for plaintiff's well-being.

29. Defendant's intent was to have plaintiff relocate to the east coast in the effort to bring plaintiff and other family members closer together. Plaintiff, however, refused to relocate. Nevertheless, as part of a further effort to confer benefits upon plaintiff and her family, solely based on family loyalty and concern, defendant allowed her to work out of Ohio, even though Lansdale Manufacturing had no need for an office or employees in that location.

30. In conjunction therewith, on and after 1988, defendant paid plaintiff a substantial salary, bonus and benefits. In addition, so that plaintiff could acquire an equity position in the company, defendant provided plaintiff with a cash bonus to be used by plaintiff to purchase (at no additional expense to plaintiff) a 5% stock interest in Lansdale Manufacturing.

31. During her employment with Lansdale Manufacturing, defendant saw to it that plaintiff was paid substantially more than she would have otherwise earned had defendant not provided the above benefits and opportunities to her.

32. Lansdale Manufacturing was in the business of manufacturing apparel. At all material times, Lansdale Manufacturing's business operations were dependent on its lending relationship with its bank. Otherwise, Lansdale Manufacturing could not fund the raw material purchases, manufacturing processes, and product shipping it had to complete before receiving payment from its customers, in which event it could not stay in business.

33. In order to obtain and maintain its lending relationship, defendant personally guaranteed all of Lansdale Manufacturing's bank debt. Plaintiff did not guaranty any of the debt and

had no other personal exposure of any kind as a result of her employment in and ownership of the company.

34. In and around January 1998, Lansdale Manufacturing experienced a cash shortage. Lansdale Manufacturing was not be able to maintain its lending relationship with its bank, and could not stay in business, without a substantial cash infusion by its shareholders. As a result, defendant loaned approximately $1 million to the company, and the other major shareholder in the company, Ellen Berenholz, loaned approximately $300,000 to the company. Sal Berenholz and Ellen Berenholz also reduced their salaries in order to assist the company's cash flow requirements. Plaintiff refused to loan any money to the company or to reduce her compensation. Despite having the right to do so, defendants did not dilute or otherwise adversely affect plaintiff's interest in the company.

35. In and around May 1998, plaintiff was terminated for cause, and was thereafter replaced.

36. At this time, defendant believed as a matter of fact that notwithstanding its prior cash problems, Lansdale Manufacturing had solidified its lending relationship with its bank as the result of the shareholder loans, and other facts and circumstances. Consequently, defendant believed as a matter of fact that Lansdale Manufacturing was a viable company with great potential.

37. At this time, plaintiff, as well, believed as a matter of fact that notwithstanding its prior cash problems, Lansdale Manufacturing had solidified its lending relationship with its bank as the result of the shareholder loans, and other facts and circumstances. Consequently,

plaintiff, as well, believed as a matter of fact that Lansdale Manufacturing was a viable company with great potential.

38. Based upon her aforesaid beliefs respecting Lansdale Manufacturing, plaintiff stridently asserted and stressed to defendant that but for her termination, she would have continued to be employed by Lansdale Manufacturing for many years, during which she would have earned substantial sums of money. As a result thereof, plaintiff insisted that Lansdale Manufacturing agree to pay her substantial severance pay, even though no such payments of any kind were due and owing to her, by contract or otherwise.

39. Based upon the parties' aforesaid beliefs respecting Lansdale Manufacturing, over the objection of other officers, defendant utilized his controlling interest in Lansdale Manufacturing to effectuate an agreement whereby Lansdale Manufacturing agreed to pay plaintiff $125,000 in severance pay, even though no such payments of any kind were due and owing to her, by contract or otherwise. All of these payments have been made and accepted by plaintiff.

40. Based upon her aforesaid beliefs respecting Lansdale Manufacturing, plaintiff, in addition, stridently asserted and stressed to defendant that she should receive more than the aforementioned severance pay. Accordingly, she demanded that defendant buy her stock in Lansdale Manufacturing, for a substantial sum of money, even though defendant had no obligation to do so. Plaintiff insisted that the purchase be effectuated by September 1998, before defendant left on a scheduled overseas trip.

41. Based upon the parties' aforesaid beliefs respecting Lansdale Manufacturing, in or around September 1998, in the effort to preserve family unity, defendant agreed to buy plaintiff's stock as she demanded. Consequently, plaintiff and defendant executed the afore-described Agreement, which included provisions detailing defendant's purported obligation to purchase plaintiff's 5% interest in Lansdale Manufacturing for $168,000, in 12 monthly installments, from January 1, 1999 through January 31, 2000.

42. For the reasons and in the circumstances described above, at the time that the alleged agreements to pay the severance and purchase the stock were made, plaintiff and defendant each believed as a matter of fact that Lansdale Manufacturing had at that time solidified its banking relationship presently and for the future, and that as a result, Lansdale Manufacturing was a financially viable company, and would remain as such for the foreseeable future.

43. Unknown to either plaintiff or defendant, and contrary to the facts they believed to exist at the time, while plaintiff and defendant were negotiating and finalizing their aforesaid agreements, Lansdale Manufacturing's bank was actively considering and planning the termination of its lending relationship with Lansdale Manufacturing.

44. In October 1998, approximately one and one-half months after the Agreement was signed, Lansdale Manufacturing's bank notified defendant that it would in fact terminate its banking relationship with Lansdale Manufacturing, and unless Lansdale Manufacturing quickly found a replacement lender, the bank would insist that Lansdale Manufacturing cease operations and liquidate its assets for the bank's benefit. This notification was

completely contrary to the factual beliefs and assumptions held by, and the information known to, plaintiff and defendant when the aforesaid agreements were negotiated and finalized.

45. Defendant diligently tried to obtain a replacement lender, but could not do so due to the lending climate at the time. Consequently, defendant attempted to find a merger partner or to negotiate a sale of the business, but was unsuccessful in doing so. As a result, by the time the first installment on the Agreement was ostensibly due, Lansdale Manufacturing had lost virtually all of its value.

46. By May 1999, at the insistence of its bank, Lansdale Manufacturing completed a liquidation of its assets. All of the proceeds from the liquidation were paid to the bank. In addition, the building in which Lansdale Manufacturing conducted business was owned by defendant, and defendant liquidated the building and remitted all net proceeds therefrom to the bank. The proceeds from the above were not sufficient to satisfy Lansdale Manufacturing's debt, however, and as a result, pursuant to his guaranty, defendant, in addition to having paid over the proceeds from the building, paid hundreds of thousands of dollars from his own funds to satisfy the indebtedness to the bank, lost his March 1998 $1 million loan to the company (as did the other major shareholder), and obtained no salary for 1998 and 1999. Plaintiff, on the other hand, received her full severance, and suffered no loss of any kind.

47. Plaintiff was at all times made aware of all of the above facts and circumstances. Notwithstanding same, plaintiff demanded that defendant purchase her stock pursuant to

the Agreement, even though plaintiff knew, *inter alia*, that the basic factual assumptions on which the Agreement had been based were mistaken, even though plaintiff knew that the basic and fundamental purpose of the Agreement had been vitiated, even though plaintiff knew that she had no right to retain the money received or to demand additional money under such circumstances, and even though plaintiff knew that it would be unconscionable to retain the money previously paid and to seek to enforce the Agreement under such circumstances.

48. In order to mollify plaintiff and in an effort to preserve familial relationships, defendant paid plaintiff $15,000, and plaintiff reaped the tax savings that resulted from the demise of Lansdale Manufacturing, commensurate with her ownership interest. Defendant presumed that, in view of the fact that plaintiff's stock was in fact worthless, that plaintiff had realized substantial windfalls due to defendant's largesse, and that defendant had suffered huge losses while plaintiff had not risked any funds whatsoever, plaintiff would consider such to be a show of good faith and, in mutual recognition of their family ties, would cease further proceedings. Instead, plaintiff accepted the monies, and then brought the present lawsuit, without having even acknowledged receipt of same.

49. Plaintiff's claim is barred in whole or in part by virtue of the parties' mutual mistakes of fact.

50. Plaintiff's claim is barred in whole or in part by virtue of the parties' unilateral mistakes of fact.

51. Plaintiff's claim is barred in whole or in part by virtue of the fact that it would be unconscionable to afford plaintiff the relief she seeks.

52. Plaintiff is estopped to assert her claim, in whole or in part.

53. Plaintiff's claim is barred in whole or in part by virtue of the doctrines of impossibility, impracticability and frustration of purpose.

54. Plaintiff's claims are barred in whole or in part by virtue of lack of and/or failure of consideration.

55. Plaintiff's claims are barred in whole or in part by virtue of the fact that plaintiff has been unjustly enriched.

56. Plaintiff's claims are barred in whole or in part by virtue of the fact that any agreement between the parties should be rescinded.

57. Plaintiff's claims are barred in whole or in part by virtue of the fact that any agreement between the parties is otherwise void.

58. In the alternative, defendant is entitled to a set off against any sums found to be due and owing to plaintiff in the amount of sums paid to and benefits conferred upon plaintiff.

**WHEREFORE,** defendant requests that the Court dismiss the Complaint, or in the alternative reduce the amount adjudged to be due and owing to the plaintiff in accordance with the set-offs and other claims and rights to which the defendant is entitled , and that the Court award such other relief as it may deem appropriate.

## COUNTERCLAIM

59. The foregoing averments are hereby incorporated by reference.

60. Jurisdiction is based on diversity of citizenship, pursuant to 28 U.S.C. §1332(a)(1).

61. By virtue of the above facts and circumstances, defendant is entitled to a decree and judgment rescinding the agreement pursuant to which plaintiff was paid the aforesaid $125,000 in severance pay.

62. By virtue of the above facts and circumstances, defendant is entitled to a decree and judgment that plaintiff has been unjustly enriched in the amount of the aforesaid $125,000 plaintiff was paid in severance pay, plus the additional $15,000 defendant paid to plaintiff.

63. By virtue of the above facts and circumstances, defendant is entitled to a decree and judgment ordering plaintiff to pay restitution to defendant, and otherwise to pay damages to defendant, in the amount of the aforesaid $125,000 plaintiff was paid in severance pay, plus the additional $15,000 defendant paid to plaintiff, plus interest.

64. By virtue of the above facts and circumstances, defendant is entitled to a declaratory judgment declaring and setting forth that:

    a. plaintiff has no right to retain, and must repay to defendant, the aforesaid $125,000 plaintiff was paid in severance pay, plus the additional $15,000 defendant paid to plaintiff, plus interest;

    b. The Agreement is void and otherwise unenforceable.

65. Defendant has obtained from Lansdale Manufacturing by way of assignment and subrogation all of Lansdale Manufacturing's claims, rights and entitlements against and from plaintiff, such that defendant is the real party in interest.

**WHEREFORE,** defendant requests that the Court enter a decree and judgment requiring plaintiff to pay to the defendant $140,000, plus interest and costs; that the Court enter a

declaratory judgment as set forth above; and that the Court award such other relief as it may deem appropriate.

                                         **POWELL TRACHTMAN LOGAN CARRLE BOWMAN & LOMBARDO, P.C.**

By:_____
    Michael G. Trachtman
    Attorney I.D. No.: 19525
    475 Allendale Road, Suite 200
    King of Prussia, PA 19406
    (610) 354-9700

Date:_____

    Attorney for Defendant

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOYCE R. MONGER** | : | **CIVIL ACTION – LAW** |
| | : | |
| v. | : | NO.:   02-CV-2757 |
| | : | |
| **SALOMON J. BERENHOLZ** | : | **JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

The undersigned counsel for defendant, Salomon J. Berenholz, hereby certifies that on this date a true and correct copy of the foregoing Defendant's Answer With Affirmative Defenses and Counterclaim was served upon counsel for plaintiff via U.S. First Class Mail, postage prepaid, addressed as follows:

Gary A. DeVito, Esquire
***Zarwin Baum DeVito Kaplan O'Donnell & Schaer, PC***
1515 Market Street, Suite 1200
Philadelphia, PA 19102
(*Attorney for Plaintiff*)


**POWELL TRACHTMAN LOGAN CARRLE
BOWMAN & LOMBARDO, P.C.**


By:_____
       Michael G. Trachtman

Date:  _____

KOP:222752v1 4523-01